*840 OPINION OF THE COURT
W. Patrick Falvey, J.
Defendant appeals from a Village of Penn Yan Justice Court conviction of aggravated driving while intoxicated (DWI) (Vehicle and Traffic Law § 1192 [2-a]) and common-law DWI (§ 1192 [3]), following jury trial. This appeal brings up the issue of the Confrontation Clause in view of Crawford v Washington (541 US 36 [2004]).
After defendant was stopped and performed field sobriety tests, when asked to take a breathalyzer test, he asked to take a blood test instead. His request was accommodated by the police. At trial, the lab person who tested the blood sample did not testify, instead her supervisor testified.
Defendant also argues that the People failed to elicit evidence as to proper chain of custody of the blood samples taken from the defendant. Defendant asserts that without the evidence of the blood test results, there was insufficient evidence to support convictions under either Vehicle and Traffic Law § 1192 (2-a) or (3). Defense counsel notes that defendant is disabled, and this affected his performance on the field sobriety tests.
Defendant further argues that the prosecutor impermissibly commented on the blood test results during opening statements, resulting in impermissible prejudice.
The People oppose the appeal, arguing that since the blood test was done at the defendant’s request, there is no Crawford issue; that the chain of custody was established at the trial; that the trial evidence was sufficient to support each conviction and the defendant was not prejudiced by the People’s opening statement.
The appeal is granted, the judgment is reversed on the law, and the sentence is vacated. The admission of the blood test results was error. And, it cannot be determined if the erroneously admitted blood test results tainted the jury as to the defendant’s guilt of the common-law DWI.
In Bullcoming v New Mexico (564 US —, 131 S Ct 2705 [2011]), a DWI defendant’s blood was analyzed for blood alcohol concentration. The forensic analyst did not testify at the trial, being unavailable because he had been placed on unpaid leave for an unrevealed reason. Instead, a scientist at the testing facility, who had not observed or reviewed the certifying employee’s analysis, testified for the People concerning the report which was then admitted into evidence at the DWI trial. The *841 trial court determined that the report was testimonial in nature, citing Melendez-Diaz v Massachusetts (557 US 305 [2009]) and Crawford v Washington (541 US 36 [2004]). Nevertheless, the trial court admitted the report, finding the admission did not violate the Confrontation Clause because the certifying analyst “was a mere scrivener” transcribing the results generated by the gas chromatograph machine, and because the testifying analyst qualified as an expert witness regarding the gas chromatograph machine.
The Supreme Court reversed, holding that the blood-alcohol analysis reports were testimonial in character, citing Melendez-Diaz, and finding that the Confrontation Clause prohibits “the testimonial statement of one witness ... to enter into evidence through the in-court testimony of a second person.” (Bullcoming, 564 US at —, 131 S Ct at 2713.)[1],[2]
Here, the analyst that performed the test of defendant’s blood did not certify the blood test report that was admitted into evidence. Instead, the supervising chief toxicologist, certified in exhibit 4, pursuant to Criminal Procedure Law § 180.60 (8) and § 190.30 (2) that the copy “is a true and accurate report concerning the results of tests and examinations which were conducted at the Monroe County Medical Examiner’s Office, Forensic Toxicology Laboratory under my direction and recorded in this Report number T2010-022.” The document was acknowledged before a notary on February 21, 2010. The Chief Toxicologist, Dr. Beno, then testified at the trial. She testified that she reviewed the raw data and “anything that analyst has completed,” including a summary of the results, and the chromatograms. She reviewed that data and signed off after the analyst completed the sampling. Beno also testified as to how the testing is accomplished by “headspace gas chromatography” using an instrument called a PerkinElmer Clarus 500 Gas Chromatograph and a Turtle Matrix 40 Headspace Analyzer. She also testified about the lab’s procedure on chain of custody, including the assignment of a bar code and case number, when a sample is received, but she did not receive the sample and examine it when it arrived at the lab. On cross-examination, Dr. *842 Beno testified that she did not individually watch this particular case.
Beno certified exhibit 4. But, as in Bullcoming, as the testifying witness, she is not the person who performed on the sample “a particular test, adhering to a precise protocol.” (Bullcoming, 564 US at —, 131 S Ct at 2714.) Thus, she could not answer questions posed by defense counsel about whether the sample was clotted or unclotted or whether the tubes delivered to the lab appeared to be in normal condition when blood was drawn from a tube for the test.
The Supreme Court notes in Bullcoming, that surrogate testimony by a qualified analyst
“could not convey what Caylor [the analyst that did the testing] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst’s part . . . With Caylor on the stand, Bullcoming’s counsel could have asked questions designed to reveal whether incompetence, evasiveness, or dishonesty accounted for Caylor’s removal from his work station.” (Bullcoming, 564 US at —, 131 S Ct at 2715.)
Therefore, on the law, this court concludes that exhibit 4 was improperly admitted into evidence at the defendant’s trial. Without this exhibit, the proof submitted to the jury was not legally sufficient to establish defendant’s guilt of aggravated driving while intoxicated.
The court is not persuaded that because this defendant requested the blood test, the evidence does not present a Crawford issue. The police assented to defendant’s request; the evidence was taken by the police immediately after the blood draw; they determined how the sample was stored, where and when it was sent for analysis, collected the sample and the results after the analysis. Furthermore, the People used the evidence on its case-in-chief.
The common-law DWI charge must also be dismissed. (People v Gower, 42 NY2d 117 [1977].) It is impossible to determine whether or not the erroneous admission of the blood test results infected the conviction under Vehicle and Traffic Law § 1192 (3). (See also People v English, 103 AD2d 979 [3d Dept 1984].)
The court has considered the remainder of defendant’s arguments and find them to be moot given the court’s order herein.
*843 Therefore the judgment of conviction is reversed and the matter is remitted to the Village of Penn Yan Justice Court for a new trial.

. The court has considered People v Rawlins (10 NY3d 136 [2008]), involving DNA evidence, and to the extent this opinion conflicts with that decision, this court is bound by the more recent precedent of Bullcoming. Rawlins may also be distinguished because Rawlins involved DNA evidence, while Bullcoming and the present case involve blood alcohol test results.

. (Compare People v Pealer, 89 AD3d 1504 [4th Dept 2011], citing Bull-coming.)